IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

**WEST VIRGINIA HIGHLANDS**
**CONSERVANCY, OHIO VALLEY**
**ENVIRONMENAL COALITION,**
**and SIERRA CLUB,**

      Plaintiffs,

v.                                          CASE NO. 1:19-CV-149 (Kleeh)

**DANA MINING COMPANY, LLC,**

      Defendant.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### I.    INTRODUCTION

Dana Mining Company, LLC ("Dana") holds permits for the Prime No. 1 Deep Mine located in Monongalia County, West Virginia.[1] Discharges of treated water and surface runoff from the site are regulated by a Clean Water Act permit issued by the West Virginia Department of Environmental Protection ("WVDEP"). Plaintiffs claim that certain discharges of pollutants from the site violate a special condition of WVDEP's permitting regulations, which are incorporated by reference into the permit. *See Ohio Valley Envtl. Coalition v. Fola Coal Co., LLC*, 845 F.3d 133, 139 (4th Cir. 2017). However, several months before Plaintiffs filed the Complaint in this action, a revision to West Virginia's Clean Water Act program took effect and the special condition was removed. An express provision of the Clean Water Act provides that when a permit holder discharges pollutants in compliance with the terms and conditions of its permit, the permit will "shield" its holder from liability. 33 U.S.C. § 1342(k). This "permit shield" defense is an

---

[1] The mine has not been operating for a number of years and stopped producing coal in December 2015. Dana finished recovering mine equipment in 3Q16; built the mine seals in 4Q16; and backfilled the portal and air shafts in 2Q17. There has been no economic activity from this mine for some time.

absolute bar against governmental enforcement action and citizen suits such as this one. *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 268 F3d 255, 266 (4th Cir. 2001). As a result, Plaintiffs' Complaint fails to state a claim under the Clean Water Act and that claim should be dismissed.

Plaintiffs' Complaint raises a second claim that the same discharges of pollutants from Dana's mine also violate the Surface Mining Control and Reclamation Act ("SMCRA"). However, SMCRA expressly prohibits the regulation of surface mining in a manner that conflicts with the Clean Water Act. 30 U.S.C. § 1292(a)(3). In a citizen suit filed by the Sierra Club in Kentucky, which raised similar claims under both the Clean Water Act and SMCRA, the Sixth Circuit held that because Sierra Club's Clean Water Act claim was barred by the permit shield, its SMCRA claim was also barred pursuant to 30 U.S.C. § 1292(a)(3). *Sierra Club v. ICG Hazard, LLC*, 781 F.3d 281, 290-92 (6th Cir. 2015). As the Court explained, to hold the defendant liable under SMCRA for discharges of pollutants that are authorized by the defendant's NPDES permit would conflict with the Clean Water Act, which SMCRA expressly prohibits. *Id*. at 291. Therefore, Plaintiffs' Complaint also fails to state a claim under SMCRA and that claim should be dismissed.

As set forth fully below, Plaintiffs' Complaint fails to state a claim upon which relief can be granted under either the Clean Water Act or SMCRA. Therefore, the Complaint should be dismissed.

## II. BACKGROUND

The Prime No. 1 Deep Mine is regulated by permits issued by WVDEP pursuant to West Virginia's federally-delegated regulatory programs under the Federal Water Pollution Control Act, known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251, *et seq*., and SMCRA, 30 U.S.C. §§

2

1251, *et seq*. This section provides a summary of these regulatory programs and their similar citizen suit provisions.

**A.      THE CLEAN WATER ACT ("CWA")**

The CWA prohibits the discharge of pollutants from "point sources"[2] into "waters of the United States," except in compliance with a permit issued pursuant to the Act. 33 U.S.C. §§ 1311 & 1342. Such permits are called National Pollutant Discharge Elimination System ("NPDES") permits and are issued by the Environmental Protection Agency ("EPA") or by a State with a federally-authorized NPDES program, as is the case in West Virginia. 33 U.S.C. § 1342(a)(2); 47 Fed. Reg. 22,363 (May 24, 1982). Once a State's program has been authorized by EPA, EPA's role is one of oversight to ensure that the program complies with the requirements of the CWA. One example of EPA's oversight authority is a regulation that establishes procedures for EPA to review and approve revisions to a State's NPDES program. *See* 40 C.F.R. § 123.62.

States have primary authority under the CWA to adopt and administer water quality standards that apply to the waters within their boundaries. 33 U.S.C. § 1313(a). Water quality standards have two components: (1) stream uses (such as "public water supply") and (2) the criteria required to maintain those uses. *Id*. Water quality criteria can be numeric or narrative. For example, in West Virginia, the concentration of iron in a stream that is used as a public water supply cannot exceed 1.5 milligrams per liter to protect that use. *See* W. Va. Code R. ("WVCSR") § 47-2-1, Appendix E, Table 1. Narrative criteria, on the other hand, describe conditions that must be maintained in a stream to protect its uses. West Virginia's narrative criteria are found at WVCSR § 47-2-3 ("Conditions Not Allowable in State Waters").

---

[2] A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include agricultural stormwater discharges and return flows from irrigated agriculture." 33 U.S.C. § 1262(14).

Under the CWA's regulatory scheme, water quality standards apply to a State's waters, not to discharges of pollutants that may enter those waters. It is the State's responsibility to ensure that its water quality standards are protected. One way States do this is by calculating "effluent limitations,"[3] which restrict the amounts of particular pollutants that are allowed to be present in a particular discharge to ensure that the discharge does not cause the levels of pollutants in the stream where the discharge occurs to exceed the numeric criteria applicable to that stream. These effluent limitations are imposed as conditions in the NPDES permit that covers that particular discharge. *See Westvaco Corp. v. EPA*, 899 F.2d 1383, 1384 (4th Cir. 1990); *Am. Paper Inst., Inc. v. EPA*, 996 F.2d 346, 350 (D.C. Cir. 1993) ("[W]ater quality standards by themselves have no effect on pollution; the rubber hits the road when the state-created standards are used as the basis for specific effluent limitations in NPDES permits.").

Under this regulatory scheme, the burden is on the State to impose adequate permit conditions to ensure that water quality standards are protected, while the burden is on the permit holder to comply with the conditions of its permit. Accordingly, a permit holder is "shielded" from liability under the CWA for discharges of pollutants that comply with the conditions of its permit. 33 U.S.C. § 1342(k). The purpose of this "permit shield" is "to provide permittees with maximum certainty during the fixed terms of their permits" and "relieve them of having to litigate in an enforcement action the question [of] whether their permits are sufficiently strict." 45 Fed. Reg. 33,290, 33,311 (May 19, 1980); *E.I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 138 n. 28 (1977).

---

[3] The Clean Water act defines "effluent limitation" as "any restriction established by a State…on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters[.]" 33 U.S.C. § 1362(11).

4823-4521-8478.v3

B.     THE SURFACE MINING CONTROL AND RECLAMATION ACT ("SMCRA")

SMCRA prohibits any person from engaging in surface coal mining operations without first obtaining a permit issued by the Office of Surface Mining Reclamation and Enforcement ("OSM") or by a State with a federally-approved SMCRA program, as is the case in West Virginia.[4] 30 U.S.C. § 1256(a); 30 C.F.R. § 948.10 (approval of West Virginia's program). SMCRA permits require mining operations to comply with all applicable "performance standards," which are established by OSM or States. Relevant to this case, West Virginia's performance standards require all surface mining activities to be conducted "to minimize the disturbance of the hydrologic balance within the permit and adjacent areas" and "to prevent material damage to the hydrologic balance outside the permit area." WVCSR § 38-2-14.5. To protect the hydrologic balance, these performance standards also provide that "[d]ischarges of water from areas disturbed by surface mining activities shall be made in compliance with all applicable State and Federal water quality laws and regulations[.]" WVCSR § 38-2-14.5.b.

Although these performance standards address the impact of mining activities on the "hydrologic balance," SMCRA expressly provides that "[n]othing in this chapter shall be construed as superseding, amending, modifying, or repealing" the CWA or State or federal regulations promulgated pursuant to the CWA. 30 U.S.C. § 1292(a)(3). Since it was first enacted, this provision has been interpreted to mean that "where [SMCRA's] regulation of surface mining's hydrologic impact overlaps [the CWA's]," SMCRA "expressly directs that the [CWA] and its regulatory framework are to control[.]" *In re Permanent Surface Mining Regulation Litigation*, 627 F.2d 1346, 1366-69 (D.C. Cir. 1980). It is only "where the [CWA] and its underlying

---

[4] SMCRA also regulates the surface effects of underground mining operations and requires such operations to obtain a permit issued pursuant to SMCRA. 30 U.S.C. § 1266.

regulatory scheme are silent so as to constitute an 'absence of regulation' or a 'regulatory gap'" that SMCRA authorizes regulation without creating a conflict with the CWA. *Id*. at 1367.

**C.    CITIZEN ENFORCEMENT UNDER THE CWA AND SMCRA**

The CWA and SMCRA contain similar provisions allowing citizens to sue permit holders in federal court for violating the conditions of their permits. 33 U.S.C. § 1365; 30 U.S.C. § 1270. Before a citizen can sue a permit holder under either statute, they must first provide notice of the alleged violation to the permit holder, the State in which the alleged violation occurs, and the federal agency that administers the statute (EPA or OSM). 33 U.S.C. § 1365(b)(1)(A); 30 U.S.C. § 1270(b)(1). The citizen must provide this "notice of intent" to sue at least sixty days before they file suit. *Id*.

Under the CWA, "any citizen may commence a civil action on his own behalf […] against any person…who is alleged to be in violation of…an effluent standard or limitation[.]" 33 U.S.C. § 1365(a)(1). For purposes of the citizen suit provision, "effluent standard or limitation" is defined to include an NPDES permit or any condition of an NPDES permit. 33 U.S.C. § 1365(f). Due to the use of the present tense in the citizen suit provision (*i.e.*, the permit holder "is alleged <u>to be</u> in violation"), citizens can only sue permit holders for ongoing or intermittent violations of their permit, but not violations that are "wholly past." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 64 (1987).[5]

Under SMCRA's citizen suit provision, "any person having an interest which is or may be adversely affected may commence a civil action on his own behalf […] against any…person who is alleged to be in violation of any rule, regulation, order or permit[.]" 30 U.S.C. § 1270(a)(1). Due to the use of the present tense in SMCRA's citizen suit provision, SMCRA also prohibits citizen

---

[5] By contrast, the CWA authorizes EPA and States to take enforcement action against permit holders for past violations.

4823-4521-8478.v3

suits for wholly past violations. *See Ohio Valley Envtl. Coalition v. Hobet Mining, LLC*, 723 F.Supp.2d 886, 902 n. 7 (S.D.W.Va. 2010) (citizen suit provisions of CWA and SMCRA are almost identical and therefore subject to same analysis).

### III.     STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must determine whether the complaint is legally sufficient "under the facts alleged and under any facts that could be proved in support of the complaint[.]" *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). If, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief," the motion should be granted. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

However, courts are not required to accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *Id*. at 730. As such, it is well-established that courts may properly consider certain materials that could technically be described as "outside the pleadings" without converting a motion to dismiss into a motion for summary judgment pursuant to Rule 12(d). *See, e.g., Haleblan v. Berv*, 644 F.3d 122, 130 n. 7 (2d Cir. 2011) (courts can consider documents incorporated by reference into a complaint or relied upon by plaintiffs in bringing suit); *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n. 2 (3rd Cir. 2006) (courts can consider matters of public record and undisputedly authentic documents attached to a motion to dismiss). Some such materials are cited in this memorandum of law and/or attached to Dana's motion.

7

## IV. ARGUMENT

Plaintiffs' Complaint states two causes of action. First, Plaintiffs allege that Dana's discharges violate a special condition of WVDEP's permitting regulations that are incorporated by reference into its NPDES permit. Second, Plaintiffs allege that these same discharges also violate one or more conditions of Dana's SMCRA permit. However, a revision to West Virginia's CWA program, which took effect prior to the filing of the Complaint in this action, removed the special condition. As discussed below, this program revision is fatal to both the CWA claim and the SMCRA claim. As a result, Plaintiffs' Complaint fails to state a claim under either statute and should be dismissed.

**A. DUE TO A REVISION OF WEST VIRGINIA'S CLEAN WATER ACT PROGRAM THAT TOOK EFFECT PRIOR TO THE FILING OF THE COMPLAINT IN THIS ACTION, PLAINTIFFS CANNOT STATE A CLAIM THAT DANA IS IN VIOLATION OF ANY CONDITION OF ITS NPDES PERMIT**

**1. A Revision to West Virginia's Clean Water Act Program Removed the Special Condition that Plaintiffs Claim Dana is Violating**

Plaintiffs' claims in this case relate to discharges of pollutants from one particular "outlet" at Dana's mining operation, which is located on an unnamed tributary of Robinson Run, a tributary of the Monongahela River. Complaint, ¶ 52. The Complaint alleges that the discharges from this outlet contain high levels of conductivity,[6] which is causing the levels of conductivity in the unnamed tributary and in Robinson Run to increase. *Id*., ¶¶ 40-41. Plaintiffs allege that the high conductivity in these streams is causing harm to aquatic life in violation of certain narrative water quality standards.[7] *Id*., ¶¶ 54. Finally, Plaintiffs allege that this violates a special condition of

---

[6] Conductivity measures the ability of an aqueous solution to conduct electricity, and it correlates to the concentration of ions in a solution—the higher the concentration of ions, the higher the conductivity. Plaintiffs' Complaint also refers to "specific conductance," "dissolved solids," "ionic chemicals," "ionic strength," "ionic stress," "ionic pollutants," and "ionic toxicity." *See* Complaint *passim*. For purposes of this case, these terms are used interchangeably.

[7] The specific narrative water quality standards that Plaintiffs claim are being violated by Dana's discharges provide:

8

Dana's NPDES permit that prohibits discharges that cause violations of water quality standards. *Id.*, ¶ 55.

As discussed above, an NPDES permit holder is not typically required to ensure that its discharges comply with water quality standards; rather, the permit holder is required to comply with the permit's numeric effluent limitations, which the permitting authority has determined will be protective of water quality standards. However, Plaintiffs allege that Dana's high conductivity discharges violate a special condition of WVDEP's permitting regulations, which are incorporated by reference into Dana's NPDES permit. Plaintiffs allege that this special condition imposes an obligation on Dana to meet water quality standards in addition to meeting the numeric effluent limitations in its permit. Complaint, ¶¶ 52-56. *See also Fola*, 845 F.3d at 139 (4th Cir. 2017) (interpreting and applying this special condition). However, several months before Plaintiffs filed their Complaint, a revision to West Virginia's CWA program took effect, which removed this special condition from WVDEP's permitting regulations. *See* Exhibit 1 (EPA's March 27, 2019 approval of WV's program revision); 84 Fed. Reg. 16,010 (April 17, 2019) (EPA's notice of WV's program revision).

Dana's NPDES permit, like all NPDES permits WVDEP issues to coal mining facilities, incorporates by reference a State regulation that contains a list of "conditions applicable to all

---

> 3.2. No sewage, industrial wastes or other wastes present in any of the waters of the State shall cause therein or materially contribute to any of the following conditions thereof: […]
>
> 3.2.e. Materials in concentrations which are harmful, hazardous or toxic to man, animal or aquatic life; […]
>
> 3.2.i. Any other condition, including radiological exposure, which adversely alters the integrity of the waters of the State, including wetlands; no significant adverse impact to the chemical, physical, hydrologic, or biological components of aquatic ecosystems shall be allowed.

WVCSR §§ 47-2-3.2.e & -3.2.i.

9

permits." *See* WVCSR § 47-30-5. Plaintiffs' Complaint alleges that one of these conditions, § 5.1.f, provides:

> The discharge or discharges covered by a WV/NPDES permit are to be of such quality so as not to cause violation of the applicable water quality standards adopted by the Department of Environmental Protection, Title 47 Series 2.

Complaint, ¶ 35. However, in 2015 the West Virginia Legislature enacted certain changes to WVDEP's permitting regulations, which included the deletion of this language from § 5.1.f. *See* Ex. 1 at 3. *See also Fola*, 845 F.3d at 137 (discussing legislative changes). In addition, the Legislature enacted certain amendments to the State Water Pollution Control Act "that explicitly prohibit[] enforcing water quality standard violations against permit holders." *Fola*, 845 F.3d at 137. *See also* Ex. 1 at 2-3.[8] As noted by the Fourth Circuit, these legislative enactments "certainly evince West Virginia's present desire to cease enforcement of water quality standards against permit holders." *Fola*, 845 F.3d at 140 (emphasis in original).[9]

WVDEP submitted these legislative changes to EPA for its review pursuant to the procedures set forth in 40 C.F.R. § 123.62. Ex. 1 at 2. On March 27, 2019, EPA notified WVDEP that it had approved the changes after determining that "West Virginia's NPDES program as revised remains consistent with the applicable requirements in 40 C.F.R. part 123 and the Clean Water Act." *Id*. As EPA noted in its "Decision Rationale," "nothing in the CWA or its implementing regulations requires inclusion of…a narrative condition" such as the one previously imposed by § 5.1.f. *Id*. at 5-6. Furthermore, nothing in the program revision relieves WVDEP of its obligation to impose permit conditions that are sufficient to ensure compliance with water

---

[8] These amendments were codified in existing provisions of the Water Pollution Control Act, W. Va. Code §§ 22-11-6 and -8.
[9] The Court did not give effect to these legislative changes in *Fola* because EPA had not yet approved them as revisions to West Virginia's CWA program. 845 F.3d at 137.

4823-4521-8478.v3

quality standards. *Id.* at 5.[10] Pursuant to the CWA and EPA's regulations, the revision to West Virginia's NPDES program took effect as of the date of EPA's approval. 33 U.S.C. § 1342(b); 40 C.F.R. § 123.62(b)(4). *See also* 84 Fed. Reg. at 16,011 ("These revisions are effective on March 27, 2019.").

Therefore, as of March 27, 2019, the permitting regulations that are incorporated by reference in Dana's NPDES permit did not impose the special condition regarding compliance with water quality standards on which Plaintiffs' CWA claim relies. To ensure that there was no mistake about the effect of the program revision on Dana's discharges, on July 11, 2019, Dana requested modification of its permit to reflect the revision, which WVDEP approved. *See* Exhibit 2 (2019 modification of NPDES Permit No. WV1011715) at 2. This modification was made in accordance with WVDEP's regulations for modification of NPDES permits (WVCSR § 47-30-8.2), including provisions requiring public notice and comment. *See* Ex. 2 at 7-16. Any person claiming to be adversely affected by the modification, including Plaintiffs, had a right to administratively appeal WVDEP's approval of the permit modification. W. Va. Code § 22-11-21. *See also* Ex. 2 at 3. Plaintiffs chose not to submit comments or appeal the modification.

### 2. As a Result of the Removal of the Special Condition in § 5.1.f, Plaintiffs Cannot Allege that Dana's Discharges Violate Any Condition of Its NPDES Permit

As discussed above, the CWA's citizen suit provision requires a citizen to allege that there is an ongoing violation, not one that is wholly past. The revision of West Virginia's CWA program took effect several months prior to the date that Plaintiffs filed their Complaint. Plaintiffs' Complaint does not cite any other condition of Dana's NPDES permit that its discharges of conductivity are allegedly violating (and, indeed, there is none). Since Dana's discharges are in

---

[10] As EPA further noted, imposing a narrative permit condition that requires compliance with water quality standards "is not the exclusive or required method for ensuring that NPDES permits include effluent limitations and other terms and conditions necessary to meet water quality standards." Ex. 1 at 6.

compliance with all of the conditions of its NPDES permit, Dana is shielded from liability under the CWA. 33 U.S.C. § 1342(k). As a result, the Complaint fails to state a claim upon which relief can be granted under the CWA and that claim should be dismissed.

**B.  DANA CANNOT BE HELD LIABLE UNDER SMCRA FOR DISCHARGES THAT ARE AUTHORIZED BY ITS NPDES PERMIT UNDER THE CWA**

Plaintiffs' second claim alleges that Dana's high conductivity discharges also violate its SMCRA permit, which Plaintiffs allege also prohibits discharges of pollutants that violate water quality standards. Complaint, ¶¶ 58-67. However, as discussed above, SMCRA expressly prohibits the regulation of surface mining in a manner that conflicts with the CWA, and where SMCRA regulation and CWA regulation overlap, the CWA controls. 30 U.S.C. § 1292(a)(3); *In re Permanent Surface Mining Regulation Litigation*, 627 F.3d at 1367. In a citizen suit filed by the Sierra Club in Kentucky, which raised claims very similar to those raised here, the Sixth Circuit held that since Sierra Club's CWA claim was barred by the permit shield, its SMCRA claim was also barred. *ICG Hazard*, 781 F.3d at 290-92 (6th Cir. 2015).

In that case, Sierra Club alleged that certain discharges from the defendant's mining operation violated Kentucky's water quality standards, which Sierra Club alleged constituted a violation of the mine operator's CWA permit and its SMCRA permit. *Id*. at 283, 290. There, the Sierra Club argued that if the permit shield barred enforcement of Kentucky's water quality standards under the CWA, this constituted a "regulatory gap" that could be filled under SMCRA. *Id*. at 291. The Sixth Circuit rejected this argument, concluding that "[t]he permit shield is not an absence of regulation but a substantive element of regulation under the CWA that affords consistent treatment to NPDES permit holders nationwide." *Id*. Allowing Sierra Club to enforce water quality standards through its SMCRA claim—thereby holding the defendant liable under

12

SMCRA for discharges that were authorized by its NPDES permit—would conflict with the CWA, which SMCRA prohibits. *Id*.

The same reasoning applies here. As explained, Dana's discharges of conductivity are not violating any condition of its NPDES permit, therefore Dana is shielded from liability under the CWA. Pursuant to SMCRA's provision prohibiting regulation that conflicts with the CWA, Dana cannot be held liable for the very same discharges under SMCRA. Since the Complaint fails to state a claim under SMCRA, that claim should also be dismissed.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint fails to state claims upon which relief can be granted under either the CWA or SMCRA. Dana Mining Company respectfully requests an order from the Court dismissing this action with prejudice.

Respectfully submitted,

DANA MINING COMPANY, LLC

By counsel:

/s/ *Shane Harvey*
SHANE HARVEY (WVSB No. 6604)
JENNIFER L. HUGHES (WVSB No. 9676)
JACKSON KELLY PLLC
500 Lee Street E, Suite 1600
P.O. Box 553
Charleston, WV 25301 (25322)

13

4823-4521-8478.v3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

**WEST VIRGINIA HIGHLANDS**
**CONSERVANCY, OHIO VALLEY**
**ENVIRONMENAL COALITION,**
**and SIERRA CLUB,**

      **Plaintiffs,**

**v.**                                      **CASE NO. 1:19-CV-149 (Kleeh)**

**DANA MINING COMPANY, LLC,**

      **Defendant.**

## CERTIFICATE OF SERVICE

      I, Jennifer L. Hughes, hereby certify that on December 13, 2019, I electronically filed the foregoing *Memorandum of Law In Support of Defendant's Motion to Dismiss* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

| | |
|---|---|
| Derek O. Teaney, Esq. | James M. Hecker, Esq. |
| J. Michael Becher, Esq. | Public Justice |
| Appalachian Mountain Advocates | 1620 L Street NW, Suite 630 |
| P.O. Box 507 | Washington, D.C. 20036 |
| Lewisburg, WV 24901 | jhecker@publicjustice.net |
| dteaney@appalmad.org | |
| mbecher@appalmad.org | |

                                                */s/ Jennifer L. Hughes*
                                                JENNIFER L. HUGHES (WVSB No. 9676)
                                                JACKSON KELLY PLLC
                                                500 Lee Street E, Suite 1600
                                                P.O. Box 553
                                                Charleston, WV 25301 (25322)
                                                *Counsel for Defendant*

4823-4521-8478.v3